IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BOBBY GIRIFALCO,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**DISCOUNT POWER, INC.**<br><br>*Defendant.* | Case No.<br>   2:25-cv-2955<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**[PROPOSED] FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff Bobby Girifalco ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Discount Power, Inc. ("Defendant") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.  The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendant violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent as well as calling people who had previously asked to no longer receive calls, including with the transmission of highly illegal "spoofed" caller ID numbers.

## PARTIES

4.  Plaintiff Bobby Girifalco is an individual residing in Delaware County.

5.  Defendant Discount Power, Inc. is a Connecticut based company which sells various services to lower consumer gas and electric bills.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7. This Court has general personal jurisdiction over Defendant because it is registered to do business in Pennsylvania.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts giving rise to the complaint, namely, the illegal telemarketing conduct, took place in this District because the calls and text messages were sent into this District to a 215- area code number.

## BACKGROUND

9. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

10. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

13. The TCPA also requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

14. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

15. The regulations also require any caller identification information to "include either CPN or ANI" and "permit any individual to make a do-not-call request during regular business hours." *Id.*

16. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

17. This very Court recently confirmed that there is a private right of action for violations of this provision. *Newell v. JR Cap., LLC*, No. CV 25-1419, 2025 WL 2004706, at *1 (E.D. Pa. July 16, 2025).

**FACTUAL ALLEGATIONS**

18. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

19. At no point did the Plaintiff consent to receiving telemarketing calls from the Defendant prior to receiving the calls at issue.

20. Plaintiff's telephone number, (215) XXX-XXXX, is a residential, non-commercial telephone number.

21. Plaintiff uses the number for personal, residential, and household reasons.

22. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

23. Moreover, the telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered.

24. Plaintiff's telephone number has been listed on the National Do Not Call Registry since August 9, 2013.

25. Plaintiff has never been a customer of Defendant.

26. Despite that fact, the Plaintiff received at least two telemarketing calls from the Defendant.

27. The first call came to Plaintiff's telephone number from 215-437-5499 on May 24, 2025.

28. Plaintiff's girlfriend answered the call.

29. The caller identified himself as "Mark Addison" and questioned Plaintiff's girlfriend about her electric and gas bills in an effort to sell her a plan to reduce her monthly payments and to sell Discount Power's deregulated energy.

30. Then, the call was transferred to a third-party verifier named "Jason Grey."

31. Eventually the third party verifier identified himself as confirming a sign up from Discount Power.

32. Plaintiff's girlfriend told the caller to stop calling, remove the number from the company's call list, and informed the Defendant she was on the Do Not Call list.

33. Despite this explicit request, on May 30, 2025, Plaintiff received a call from 930-203-0112.

34. The Plaintiff's girlfriend answered the call.

35. The caller identified himself as "Senior Supervisor Stephen" and again immediately began the call by asking questions about Plaintiff's girlfriend's electric bill.

36. The caller stated he was from Discount Power and informed Plaintiff's girlfriend that she could be eligible for a senior citizen discount program to lower her bills.

37. After answering a barrage of questions, Plaintiff's girlfriend was then transferred to a third party verifier named "Tricia" with TPV360, a third party verifier required by the Commonwealth of Pennsylvania.

38. The call ended with Plaintiff telling the caller to again remove him from their call list.

39. Shockingly, the Plaintiff received another two calls on June 3, 2025 from 215-734-1999 and 215-310-9141.

40. The Plaintiff's girlfriend answered the first call at 12:21 PM and was able to ascertain that the caller was calling with a similar script and also calling to sell electricity. She hung up the call after saying that she was busy with a doctor appointment.

41. The second call that the Plaintiff's girlfriend answered, the caller lied and stated that he was "William" from the "Rectification Department of PECO."

42. "William" went through a similar script as the previous two callers and then admitted that he was with "Discount Power" which he lied and called a "program name."

43. Thereafter, the Plaintiff's girlfriend was again transferred to a third party verifier, and this time, she again went through the verification process and was again transferred to "William," after she asked to be placed on the Do Not Call List.

44. Thereafter, an individual named "Zach" called the Plaintiff back from the number 844-592-0952. "Zach," who was crying, tried to apologize that the Plaintiff was getting calls and stated that he was going to "cancel the sale," but begged the Plaintiff not to make a complaint against him or his agents because he was going to lose his job for making illegal telemarketing calls.

45. Thereafter, the Plaintiff filed the instant complaint and reached an agreement in principle to resolve the matter.

46. But Defendant continued to call Plaintiff at the Plaintiff's other number 484-XXX-XXXX in a continued attempt to sell its electric services.

47. The number is also a residential telephone line because it is assigned to a residential

6

telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

48. Moreover, the telephone line is assigned to a residential landline telephone.

49. Plaintiff's telephone number has been listed on the National Do Not Call Registry since at least a year prior to the calls at issue.

50. The Plaintiff received at least four additional calls using highly illegal "spoofed" caller IDs from Defendant to this number, including on August 20, 2025 at 6:02 PM from 484-350-3601, August 21, 2025 at 7:29 PM from 215-232-1520, August 21, 2025 at 7:42 PM from 800-494-4000, and August 21, 2025 at 7:43 PM from 800-494-4000.

51. The calls were made from Discount Power in order to sell Discount Power's electric service and followed nearly identical scripting and sales pitches as the aforementioned calls, including the false representations that the callers were either from PECO or that they were providing PECO services.

52. During the second of these calls, at 7:29 PM, the Plaintiff's girlfriend, who answered the phone, stated "I'm tired of the calls, goodbye." and then hung up the call.

53. Then, on the third call, at 7:42 PM, the Plaintiff's girlfriend stated "I'm not answering these annoying calls, goodbye."

54. Notably, the latter two calls were "spoofed" to reflect PECO's legitimate public-facing customer service number.

55. So, in order to identify who was calling illegally and claiming to be PECO, including "spoofing" PECO's own caller ID on the last of these four calls, the Plaintiff's girlfriend provided her information, including because the representative falsely stated that they were calling from PECO, and yet again received an enrollment confirmation in the mail from the Defendant Discount Power, together with a record of the TPV confirmation number and electric account number provided on the call.

56. The calls all came from the following numbers, which transmitted the caller ID, in the form of both CPN and ANI as "spoofed" or potentially "spoofed" numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Available? | CNAM Result | Carrier | Spoofed? |
|---|---|---|---|---|
| 2154375499 | Y | ORTIZ, C | Cavalier | Y |
| 9302030112 | Y | BLOOMINGTON IN | Vonage | Y |
| 2157341999 | Y | PUMEX TECH | MCI | Y |
| 2153109141 | Y | MORRISVILLE PA | Level 3 | Y |
| 8445920952 | Y | TOLL FREE CALL | Inteliquent | Y |
| 4843503601 | Y | OLAJUMOKEDOSUNM | MCI | Y |
| 2152321520 | Y | BARBER GERTRUDE | Verizon | Y |
| 8004944000 | Y | PECO | IntelePeer | Y |

57. As the aforementioned chart shows, the CNAM transmitted by the ultimate telephone carriers provided CNAM functionality, but provided inaccurate CNAM functionality, since Defendant made it appear as if the calls were originating from legitimate individuals and businesses through the use of "spoofing," instead of the Defendant's name.

58. Indeed, the Defendant appears to have spoofed each and every of the numbers, as will be revealed through discovery, to further hide its identity.

59. With respect to each of the numbers listed above, none of the numbers permit a caller to call the number and lodge a do not call request during regular business hours, because

8

they are spoofed to unrelated third party phone numbers. It is not possible to call any of those numbers back to lodge a Do Not Call request during regular business hours with the Defendant.

60. The calls were unwanted.

61. The calls were nonconsensual encounters.

62. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

63. Plaintiff never provided his consent or requested the calls.

64. Plaintiff and the Classes have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

65. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

66. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant encouraging the purchase of Defendant's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Internal DNC Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

> **Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request to Defendant during regular business hours, (4) within the four years prior to the filing of the Complaint.

67. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

68. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

69. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiff.

70. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

  a. Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

  b. whether Defendant recorded or honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

  c. Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

  d. Whether Defendant should be held liable for violations committed on its behalf; and

  e. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

71. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members in each class, such that joinder of all members is impracticable.

72. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

  a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b.  The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.  Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d.  Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

73. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

74. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

75. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

76. These violations were willful or knowing.

77. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

78. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Internal DNC Class)

79. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

80. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

81. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

82. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

**COUNT III**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Telemarketing Caller ID Class)**

83. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

84. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

85. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

86. Defendant, and any possible other affiliates, agents, or other persons or entities acting on Defendant's behalf, as discovery may reveal, violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier, as well as by using "spoofed" caller IDs that did not allow consumers to lodge a do-not-call request during regular business hours.

87. These violations were willful or knowing.

88. As a result of Defendant's, or any possible other affiliates, agents, or other persons or entities acting on Defendant's behalf, as discovery may reveal, violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

89.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully request that the Court enter judgment against Defendant for:

A. Certification of the Classes as alleged herein;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned as counsel for the Classes;

D. Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. § 227(c)(5);

E. Injunctive relief for Plaintiff and members of the Classes, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry, to those who have asked them to stop, or while failing to transmit the caller ID information required by law;

F. Attorneys' fees and costs, as permitted by law; and

G. Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 7th day of October, 2025.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> PA Bar #333687
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com